IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY LYNN BRADLEY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:14-cv-3229-M-BN |
| | § | |
| JOHN KELLY, Director, | § | |
| Avalon Transitional Center-Dallas, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. The undersigned magistrate judge issues the following findings of fact, conclusions of law, and recommendation.

## Background

Petitioner Anthony Lynn Bradley filed on the Court's standard form for petitions for writs of habeas corpus under 28 U.S.C. § 2241. *See* Dkt. No. 3. The same day that Petitioner filed this action, he also filed an application for writ of habeas corpus under 28 U.S.C. § 2254. *See Bradley v. Jenkins*, No. 3:14-cv-3228-D-BN (N.D. Tex.).

Through this action, Petitioner appears to be alleging violations of his constitutional rights and seeking $10 million in damages. *See id.* at 5-7. To better ascertain the factual and legal bases for this action, the undersigned issued interrogatories to Petitioner, *see* Dkt. No. 4, and Petitioner has filed verified responses,

*see* Dkt. No. 5.

Petitioner was arrested for robbery in Dallas County on November 8, 1984. *See* Dkt. No. 5 at 1. He was convicted in the 292nd District Court of Dallas County, Texas in March 1985, was sentenced to confinement, and then – in June 1991 – was released on parole. *See id.* His parole was revoked in 2006. *See* Dkt. No. 3 at 5; Dkt. No. 5 at 4. Petitioner then spent the next approximately six years in halfway houses in Forth Worth (four years) and then in Dallas (two years). *See* Dkt. No. 3 at 5-6; Dkt. No. 5 at 5. He was released from the halfway house in Dallas – on parole – on September 13, 2012. *See* Dkt. No. 5 at 5.

Through the Section 2241 habeas application, Petitioner does not challenge a decision of a parole authority. Instead, he alleges that he was harmed because of his assignment to halfway houses. Petitioner generally alleges that being confined in a halfway house for six years violated his right to due process and was cruel and unusual punishment. *See* Dkt. No. 3 at 5-6 (alleging that, during the six years that he was living in halfway houses, he developed a bad heart; alleging that he has to take medications to treat his heart condition, treat his diabetes, and for pain; alleging that some of his relatives have died; and alleging that some legal matters "have reach[ed] time limits").

His claims, however, center around his allegation that he was harmed by the transfer from a halfway house in Fort Worth to one in Dallas. *See* Dkt. No. 3 at 5-6; Dkt. No. 5 at 6, 8. Petitioner alleges that, over the years, the conditions at the Dallas halfway house (or houses) got worse and his freedom was more limited. *See* Dkt. No.

3 at 5-6. Petitioner also alleges that he lost opportunities – most prominently, a possible job as a truck driver – through his transfer from a Fort Worth halfway house to one in Dallas. *See* Dkt. No. 5 at 6, 8; *see also* Dkt. No. 3 at 6 ("Had Petitioner stayed at Henderson Halfway House in Fort Worth, TX, Petitioner would have been employed in two weeks, which would have provided residents and Petitioner residential ELE cert, would have allowed bonding and parking, or full business the four years spent in Dallas, TX caused Petitioner to be under regular doctor case and the possibility [of] regular work almost impossible[.]"); Dkt. No. 5 at 6 (asked by the Court to explain the basis for his Section 2241 petition, Petitioner explained that the "prisoner exchange" between the Fort Worth and Dallas halfway houses cause him to lose a possible job as a truck driver and, among other allegations, that the Dallas facility's "bed bugs cause[d him] to have skin problems and large heart").

The undersigned now concludes that the Court should construe Petitioner's habeas application as presenting claims under 42 U.S.C. § 1983 and then summarily deny those claims.

## Legal Standards

"A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *cf. Althouse v. Director,*

*TDCJ-CID*, Civ. A. No. 6:11CV41, 2011 WL 573421, at *2 (E.D. Tex. Jan. 28, 2011), *rec. adopted*, 2011 WL 613509 (E.D. Tex. Feb. 14, 2011) ("It would be within the power of the Court to construe Petitioner's habeas claims as thinly-veiled § 1983 claims." (citing *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997) ("Generally, § 1983 suits are the proper vehicle to attack unconstitutional conditions of confinement and prison procedures. A habeas petition, on the other hand, is the proper vehicle to seek release from custody." (citations omitted))).

An action is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) ("A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law."). A complaint is without an arguable basis in law if it is grounded upon an untenable, discredited, or indisputably meritless legal theory, including alleged violations of a legal interest that clearly does not exist. *See Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

The court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

-4-

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss[,]" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Although a court generally cannot look beyond the pleadings in determining whether claims should be dismissed, the pleadings here include the responses to the Court's interrogatories, *see* Dkt. No. 5, which "become part of [the] pleadings," *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th

Cir. 1996)).

## Analysis

As explained above, Petitioner's allegations concern his residency in halfway houses in Fort Worth and Dallas from 2006 – following the revocation of his parole – through 2012. Through this action, Petitioner does not challenge his 2006 parole revocation. His allegations also do not concern the constitutionality of his incarceration. They are focused, instead, primarily on the harm that Petitioner claims was caused by the transfer from a Forth Worth halfway house to a halfway house in Dallas. As such, this action is similar to an action by an inmate challenging his or her conditions of confinement, and the claims asserted should be analyzed under Section 1983. *Cf. Shamburger v. Sanders*, No. CV 07-7151-JVS (PJW), 2008 WL 2446803, at *1 (C.D. Cal. June 17, 2008) ("Habeas corpus is a vehicle whereby prisoners can challenge the legality and constitutionality of their incarceration, including the length of their sentence. It is not a means to challenge the conditions of confinement, i.e., half-way house vs. home confinement. Conditions of confinement fall under the ambit of the civil rights laws." (citations omitted)).

As to Petitioner's generalized complaints associated with living in halfway houses for six years – up to September 2012, when he was again released on parole – any claim that his constitutional rights were violated is barred by Texas's two-year, personal-injury limitations statute. *See Wilson v. Garcia*, 471 U.S. 261, 273-76 (1985) (state statute of limitations period for personal-injury actions applies to all claims under 42 U.S.C. § 1983); *see also Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994);

TEX. CIV. PRAC. & REM. CODE § 16.003(a). Petitioner has failed, moreover, to link these general harms – that he developed a bad heart over the six years; that he now takes medication; and that relatives died while he was resident at the halfway houses – to his residency in those halfway houses. That is, Petitioner has failed to allege that the halfway houses caused these harms. *Cf. McConkie v. Nichols*, 392 F. Supp. 1, 5 (D. Me. 2005) ("As the only causal link between a constitutional violation and his conviction and incarceration is the violation of the unasserted Fifth Amendment claim, he cannot claim the conviction and incarceration as harm flowing directly from the coercive interrogation. The interrogation itself did not cause this harm."); *Harbridge v. Schwarzenegger*, No. CV 07-4486-GW(SH), 2010 WL 2889522, at *17 (C.D. Cal. Feb. 9, 2010), rec. adopted, 2010 WL 2889518 (C.D. Cal. July 20, 2010) (a plaintiff "must allege a causal connection or link between the actions of [a defendant] and the retaliation and conditions of confinement violations he allegedly suffered").

As to Petitioner's assertion that he was harmed by his transfer from a halfway house in Fort Worth to one in Dallas, such a claim is due to be denied because Petitioner has no protected liberty interest in the particular halfway house to which he was assigned. *See Bocanegra v. Bell*, 482 F. App'x 907, 908 (5th Cir. 2012) (per curiam) ("[A] prisoner does not have a constitutional right to be housed in a particular facility."); *Johnson v. United States*, 590 F. Supp. 2d 101, 109-10 (D.D.C. 2008) ("Upon his release on parole, the plaintiff has no constitutionally protected right to a halfway house placement or home detention arrangement. This conclusion correlates with the established principle that no prisoner has a protected interest in being designated to

-7-

serve his sentence at any particular prison, facility, or jurisdiction."); *Sorrentino v. City of Philadelphia*, No. CIV. A. 96-6604, 1997 WL 597990, at *5 (E.D. Pa. Sept. 16, 1997) ("[A] Plaintiff does not have a constitutional right in avoiding transfer from one correctional facility to another. As the Supreme Court has stated, the fact '[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated' by a prison transfer. This logic applies with the same force when a prisoner is transferred from a half-way house to another facility. Accordingly, Plaintiff's allegation that he was 'wrongfully evicted' from the half-way house in South Philadelphia to a less desirable facility does not amount to an allegation that he was deprived of a constitutionally protected right or interest and does not allege a cognizable claim under § 1983." (quoting *Meachum v. Fano*, 427 U.S. 215, 228 (1976))).

### Recommendation

The Court should construe Petitioner's habeas application as presenting claims under 42 U.S.C. § 1983 and then summarily deny his claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 7, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE